UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MISAEL PADILLA,

    Plaintiff,

    v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 07 CV 5253
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Misael Padilla ("Padilla" or "Plaintiff"), is seeking to recover damages as well as reasonable attorneys' fees, costs, and expenses from Defendants, Frank R. Villareal ("Villareal"), Guadalupe Salinas ("Salinas"), and the City of Chicago ("City"). Padilla alleges that Villareal and Salinas violated his constitutional right to due process when they stopped, searched, and arrested him without probable cause, had him prosecuted on the basis of falsified evidence, and withheld material evidence from the prosecutor. In addition, Padilla asserts a *Monell* claim against the City of Chicago and supplemental state law claims. Defendants now move to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6).

For the reasons to follow, the motion to dismiss is denied as to Counts I, II, IV, V, VI, and VII, but granted as to Count III.

## I. BACKGROUND

According to Plaintiff, on May 9, 2005, Defendant officers Villareal and Salinas, at the time both members of the Special Operations Section ("SOS"), were on duty driving a police vehicle. Padilla claims the officers pulled him over near the 4900 block of South Tripp Avenue in Chicago, Illinois. Both Padilla and his vehicle were searched. After allegedly stealing money

from Padilla, Villareal and Salinas proceeded to plant drugs and a gun on Padilla, who was falsely charged with a moving violation, drug possession, and a weapons violation. Padilla's vehicle was also impounded.

Villareal and Salinas allegedly lacked probable cause to lawfully stop, search, and arrest the plaintiff and then made false statements about their conduct concerning the incident. Defendants never revealed either their own history of fabricating evidence and falsifying charges or the SOS's similar history.[1] It was due to the officers' false statements and manufactured evidence that Padilla was charged, prosecuted, and incarcerated for approximately sixteen months until the Cook County State's Attorney's Office dismissed the charges against Padilla on September 15, 2006, in a way which was indicative of his innocence. The Cook County State's Attorney's Office has also filed criminal charges against Villareal for engaging in the activities alleged in Padilla's complaint. Padilla has suffered the loss of his liberty, extreme emotional distress, and financial loss due to the conduct of defendants Villareal and Salinas.

According to Padilla, the City of Chicago is also liable for the actions of the defendant officers since the actions taken by said officers were done pursuant to numerous policies, practices or customs of the City, including: failure to properly investigate allegations of police misconduct; failure to maintain a system which monitors patterns of alleged police misconduct; lack of proper discipline in response to sustained allegations of police misconduct; failure to properly maintain records of police misconduct and allegations of police misconduct, including

---

[1] These facts were not originally pled in Padilla's complaint and were instead first introduced in Plaintiff's response, but I am considering them here so long as they are consistent with the initial complaint, which did allege a due process claim. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992).

the use of excessive force and false arrest; and a failure to properly hire, monitor, and supervise police officers. The City maintained and implemented such policies with deliberate indifference and permitted a code of silence to exist in the department which gave rise to the Constitutional and legal violations alleged by Padilla, protected them from internal discipline or retaliation, and encouraged Villareal and Salinas to engage in the wrongful acts alleged here by Padilla.

## II. STANDARD OF REVIEW

Rule 12(b)(6) permits a court to dismiss a claim where plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, the court must construe all allegations in the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts and allegations as true. *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir.2007) (internal citation omitted). To survive a Rule 12(b)(6) motion, the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir.2007) (quoting Fed.R.Civ.P. 8(a)(2)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, (2007) (quotation marks omitted). The facts must provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Id.*

## III. ANALYSIS

Plaintiff alleges seven counts in his complaint: In Count I, he alleges that the conduct of Defendant officers violated his due process rights under 42 U.S.C. § 1983; in Count II, Plaintiff alleges a *Monell* claim against the City of Chicago under 42 U.S.C. § 1983; in Count III, Plaintiff

alleges a state law false imprisonment claim; in Count IV the plaintiff alleges a state law malicious prosecution claim; in Count V the plaintiff alleges a state law intentional infliction of emotional distress claim; in Count VI the plaintiff alleges a *respondeat superior* claim; and in Count VII the plaintiff alleges a state law indemnification claim.

**A. Due Process Claim**

Plaintiff alleges that Defendant officers Villareal and Salinas violated his due process rights by stopping, searching, and arresting him without probable cause and causing him to be prosecuted based on falsified evidence. Plaintiff also alleges that the defendant officers' fabrication of evidence, lies about their actions, and failure to disclose their own history of misconduct, as well as the history of misconduct in the SOS, amounted to *Brady* due process violations. Plaintiff asserts that if Villareal and Salinas had disclosed their history of falsifying evidence, including of the fabrication of the evidence in the incident involving the plaintiff himself, the prosecutor would have never pursued the charges against him. In support of this, plaintiff claims that the prosecutor dismissed the charges against him in a manner "indicative of his innocence."

Defendants contend that Plaintiff's pleadings amount to nothing more than conclusory allegations that fail to pass the requirements of *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007). Defendants further contend that there is no due process right to be prosecuted without probable cause and that the plaintiff's due process claim must fail because his claim is in essence a Fourth Amendment false arrest claim combined with a claim for malicious prosecution and should be treated as such. Defendants also contend that the Seventh Circuit has made it clear that a police officer lying to prosecutors does not rise to the level of a *Brady* violation.

4

The Seventh Circuit has summarized the requirements of *Twombly* and *Iqbal v. Aschroft*, 129 S.Ct. 1937 (2009), condensing them into three elements: (1) a plaintiff must give notice of his claims to the defendants; (2) the court must accept the factual allegations in plaintiff's complaint as true unless they are so vague or improbable that they do not give the defendant notice of the claims; and (3) conclusory allegations and bare recitations of the elements of a claim are unacceptable. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Even post-*Iqbal*, Plaintiffs still do not need to plead detailed factual allegations. *Iqbal*, 129 S.Ct. at 1949. Plaintiff clearly alleges that he suffered a due process violation in his complaint, thereby adequately putting defendants on notice and fulfilling the first requirement. The factual allegations contained in Plaintiff's complaint are neither so vague nor improbable as to not adequately put defendants on notice of the alleged wrongdoing, but rather describe the incident which the plaintiff believes is at the heart of his due process violation. Allegations that Plaintiff was stopped without probable cause, subsequently arrested, and subjected to unfair proceedings due to the defendant officers' failure to disclose are not totally unbelievable on their face. Plaintiff also does more than simply parrot back the elements of a § 1983 due process violation here, instead alleging both the circumstances of the alleged substantive due process violation as well as the alleged procedural due process violation, including what exactly he believes is the exculpatory evidence withheld by the defendant officers. Accordingly, I find that Plaintiff here adequately pled a due process violation.

Defendants' second contention is that Plaintiff's allegations are actually claims for false arrest under the Fourth Amendment and a claim for malicious prosecution, which they maintain should be pursued in state court. Section 1983 does not confer substantive due rights in and of

itself, but instead provides a mechanism by which one is able to defend federal rights conferred elsewhere in the Constitution. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Padilla's claim that he was stopped, searched, and arrested without probable cause is in essence a Fourth Amendment claim for false arrest and cannot be brought as a substantive due process claim when the right allegedly violated is protected elsewhere by a specific constitutional provision. *Id.* at 273. The fact that Plaintiff was prosecuted and incarcerated based on fabricated evidence is also incorrectly brought as a violation of his right to due process. What Plaintiff alleges is essentially a claim for malicious prosecution. *See McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (explaining that Plaintiff's claim that his due process rights were violated when he was deprived of his liberty based on manufactured evidence was really a claim for malicious prosecution). When there is a remedy for malicious prosecution under state law, it forecloses the possibility of bringing malicious prosecution as a constitutional tort. *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001). Nor can a plaintiff hope to disguise a malicious prosecution claim and a Fourth Amendment false arrest claim as a due process claim by blending the two together. *McCann*, 337 F.3d at 786 ("In sum, [plaintiff] cannot do an end run around the foregoing precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendement."). Thus, Defendants are correct that Plaintiff cannot proceed under the theory that there was a violation of his substantive due process rights.

This does not mean that all due process doors are shut to the plaintiff. He could still

assert a procedural due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963)[2], if he is able to show that "the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Ienco v. City of Chicago*, 286 F.3d 994, 998-99 (7th Cir. 2002) (citing *Newsome*, 256 F.3d at 752-53). Officers violate their duty under *Brady* when they do not disclose material evidence favorable to the defendant. *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). The duty to disclose encompasses both impeachment evidence as well as exculpatory evidence. *Id*. In order to establish a *Brady* violation, Padilla must show that: (1) the evidence at issue, either impeaching or exculpatory, is favorable to the accused; (2) the evidence was either not disclosed to Padilla in time for him to use it or the evidence was not otherwise available to Defendant through the exercise of reasonable diligence; and (3) the evidence at issue is material. *Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008). There are two possible *Brady* violations in the case at hand: (1) when Villareal and Salinas did not disclose the fact that they fabricated evidence which provided the basis for Padilla's charges; and (2) when they failed to disclose that they and their colleagues had a long history of falsifying evidence to frame innocent citizens.

Although law enforcement lying to prosecutors and fabricating evidence may constitute a *Brady* violation in some cases, no such violation occurs when the accused knew of the lies and

---

[2] Since this is a motion to dismiss, I am giving the plaintiff the benefit of the doubt that "prosecuted" means Padilla actually faced trial. *See Early*, at 79 (noting that "ambiguities in complaints in federal court should be interpreted in favor of plaintiffs"). However, if it turns out that the prosecutor dismissed the charges against Padilla before trial, I seriously doubt the viability of a *Brady* claim. *See, e.g., Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) (noting that where charges were dropped before a single post-arrest court appearance, no *Brady* violation occurred); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (explaining that in cases where charges have been dropped before trial, courts have universally found no *Brady* violation).

the falsification of evidence. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006). Though the defendants' actions and behavior in this case are certainly material, since the plaintiff here knew from the beginning that Defendant officers manufactured evidence, planted false evidence on him, and lied about their actions in order to frame him, he cannot argue that the evidence was either not disclosed in time for him to use it or that it was unavailable through the exercise of reasonable diligence. The officers had no duty to disclose to the plaintiff what he already knew. *Id.* at 1029; *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th. Cir. 2007). Likewise the officers did not have a duty to disclose their actions to the prosecutor since "*Brady* rights run to the criminal defendant, not to the prosecution." *Sornberger*, 434 F.3d at 1029. Although systematically concealing and lying about highly material facts could be grounds for a *Brady* violation (*see Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988)), it cannot be when the accused was aware of that concealment and lying. Thus, the defendants' failure to disclose the circumstances of the plaintiff's arrest does not constitute a *Brady* violation.

On the other hand, the officers' failure to disclose their history of fabricating evidence and framing innocent citizens could potentially state a valid *Brady* claim. Undoubtedly knowledge of a history of misconduct on the part of the defendant officers, especially misconduct so in line with the kind that the plaintiff alleges here, is favorable to the accused as it could destroy the credibility of the officers and would create a substantial amount of doubt in the mind of both the prosecutor and the factfinder. *See Thompson v. City of Chicago*, 2009 WL 674353, at *2 (N.D. Ill. Mar. 12, 2009); *Tillman v. Burge*, 2011 WL 2975671, at *11 (N.D. Ill. July 20, 2011) (denying defendants' motion to dismiss where one could infer that disclosure of a pattern or practice may have resulted in acquittal at a new trial). The evidence in question was

8

undisclosed to the plaintiff and it seems unlikely that he would be able to uncover the misconduct of the defendant officers on his own. Evidence of a pattern of police misconduct is certainly material, as knowledge of repeated misconduct and a history of framing innocent citizens could have potentially dissuaded the prosecutor from pressing charges by calling into question the credibility of the officers and possibly causing any factfinder to seriously doubt any evidence or testimony presented by those with such a dubious history. For these reasons, I am denying Defendants' motion to dismiss as to Count I.

**B. *Monell* Claim**

The plaintiff also pursues a § 1983 claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that the de facto policies maintained with deliberate indifference by the City, including customs of failing to supervise, control and discipline officers, together with the police code of silence permitted by the City, encouraged the individual defendants to commit the wrongful acts alleged by the plaintiff and are thus the source of his injuries.

Defendants first contend that the plaintiff's *Monell* claim should be dismissed since there is no underlying viable constitutional right. Since I have found that there is, this argument fails. Defendants next contend that Plaintiff's *Monell* claim amounts to nothing more than boilerplate allegations lacking in factual support and, as they are only conclusory allegations, should not be presumed true. Alternatively they contend that even if Padilla's *Monell* claim meets the pleading standard, he does not adequately state a *Monell* claim since he does not specify any policy which exists but instead only alleges various generic policies that caused his injuries. Finally, Defendants argue that the *Monell* claim should be dismissed because Padilla has failed to

establish a causal link between any of the City's policies and his constitutional injuries. In order to hold a municipality liable under § 1983, a plaintiff must show that a municipal policy or custom was the moving force behind his alleged injury. *Board of County Com'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). It is not enough for Plaintiff to "merely identify conduct properly attributable to the municipality." *Id*. Plaintiff must allege that there is (1) an explicit policy that results in constitutional deprivations when enforced; (2) a widespread practice so prevalent as to constitute a custom or usage with the force of law even if it is not an express policy; or (3) that his injury was caused by a person with final policymaking authority. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). A *Monell* claim can survive a motion to dismiss so long as it puts defendant on sufficient notice of the alleged wrongdoing. *Johnson v. City of Chicago*, 2010 WL 4790905, at *1 (N.D. Ill. Nov. 18, 2010). Accordingly, conclusory allegations about the existence of a policy at the heart of the *Monell* claim are sufficient so long as they provide defendants with proper notice. *Evans v. City of Chicago*, 2010 WL 3075651, at *2 (N.D. Ill. Aug. 5, 2010) (citing *Diaz v. Hart*, 2010 WL 849654, at *7 (N.D. Ill. Mar. 8, 2010)). Inclusion of phrases such as "highest policymaking officers" and "widespread custom" is enough to withstand a motion to dismiss for a § 1983 municipal liability claim. *McCormick v. City of Chicago*, 230 F.3d 319, 324-35 (7th Cir. 2000).

Plaintiff here has sufficiently provided notice of the alleged wrongdoing to the City. He has enumerated many particular de facto policies maintained and possibly implemented by the City, which is enough to withstand a motion to dismiss even if his allegations are conclusory. *Doe v. V.*, 2003 U.S. Dist. LEXIS 17570, at *6 (N.D. Ill. Sept. 30, 2003) ("Boilerplate allegations concerning a policy or practice are sufficient to survive a motion to dismiss."). Whether or not

his allegations are true or not remains to be seen at summary judgment. *McCormick*, 230 F.3d at 325 (noting that under the liberal federal pleading standard, courts must often wait until summary judgment to weed out unmeritorious claims). Indeed a case cited by defendants in support of their argument, *Carter v. Morris*, 164 F.3d 215 (4th Cir. 1999), was allowed to proceed to summary judgment rather than being dismissed at this early stage. Though it is true that *McCormick* was decided before the heightened pleading standard of *Twombly* and involved a *pro se* plaintiff, many district courts in this circuit have continued to regard the *McCormick* notice pleading standard as controlling in *Monell* claims. *See, e.g.,Fuery v. City of Chicago*, 2009 WL 1270201, at *5 (N.D. Ill. May 6, 2009); *Young v. City of Romeoville*, 2011 WL 1575512, at *3 (N.D. Ill. Apr. 27, 2011) (conclusory allegations in support of a *Monell* claim were sufficient to withstand a motion to dismiss). In addition to providing notice of his municipal liability claims, Plaintiff also does assert factual allegations that could support a *Monell* claim. For instance, Plaintiff's allegation that there was widespread abuse in the SOS unit similar to the kind he was subject to is sufficient factual evidence for one to infer the existence of one or more widespread policies or practices maintained with deliberate indifference by the City which encouraged such behavior.

Although Plaintiff here alleges more than one policy which was responsible for his constitutional injuries, he names each of those policies as opposed to merely alleging an unnamed, general policy held by the City. *Cf. Furstenau v. City of Naperville* 2008 WL 5412872, at *4 (N.D. Ill. Dec. 23, 2008) (motion to dismiss granted when plaintiff merely alleged that his injury was caused by defendant city following an "official policy, custom, or decision of an individual with final policy-making authority"). Moreover, at the motion to dismiss stage, a plaintiff does not need to specify the policy responsible for his constitutional deprivations;

instead, he merely needs to plead allegations sufficient to allow the City to understand the gravamen of his complaint. *Murray v. City of Chicago*, 2003 U.S. Dist. LEXIS 11806, at *9 (N.D. Ill. July 9, 2003). Conclusory allegations are enough to give Defendants proper notice. *Evans*, 2010 WL 3075651, at *2. Though Plaintiff here may not have pointed to one policy in particular as the cause of his injuries, he nonetheless enumerated numerous practices maintained by the City which he claims caused the violation of his constitutional rights. Since the plaintiff does point to particular practices and policies, though they may be boilerplate allegations, he satisfactorily puts Defendant on notice of the alleged wrongdoing and municipal liability claim and therefore adequately pleads a *Monell* claim.

Finally, Plaintiff adequately alleges that the City's policies and practices were a driving force behind the violation of his constitutional rights when he alleges that City's deliberate indifference in maintaining the alleged policies and practices, in conjunction with the code of silence in the police department, encouraged the individual defendants to commit the wrongful acts against him and also protected them from any internal discipline or retaliation. Plaintiff needs to show that the policies in question and the City's indifference would lead to his particular constitutional violation. *Carter*, 164 F.3d at 218. Plaintiff's allegation that there were widespread abuses committed by members of the SOS does potentially lend some support to the claim that the City was maintaining policies which encouraged the defendants and others to commit the wrongful acts alleged by the plaintiff here and also promised protection from any sort of discipline. Therefore, Defendants' motion to dismiss Count II is denied.

## C. State Law False Imprisonment Claim

Plaintiff also alleges a state law false imprisonment claim in that Defendants caused him

to be ultimately imprisoned despite the lack of probable cause, of which they were well aware. Defendant counters that any state law false imprisonment is time barred. Plaintiff argues that the statute of limitations for false imprisonment under Illinois law should begin to run when the accused is released from custody. Defendants, on the other hand, maintain that the statute of limitations should begin to run when the accused is first able to bring the claim, which here would be the beginning of the alleged false imprisonment.

Under Illinois law, generally the statute of limitations begins to run when "facts exist that authorize one party to maintain an action against under" unless it is a continuing violation. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 86 (Ill. 2003). Even, however, in the case of an ongoing violation, if the subsequent damages result from a single, initial act, the statute of limitations begins to run from the date of that act. *Id*. In keeping with general principles of Illinois law, it follows that the statute of limitations for a false imprisonment claim begins to accrue when a person is first falsely imprisoned since the person presumably knows he was falsely imprisoned. Indeed it appears that most Northern District of Illinois courts have reached a similar conclusion that the statute of limitations accrues from the first day of the false imprisonment rather than the last. *See, e.g., Pierce v. Pawleski*, 2000 WL 1847778, at *2 (N.D. Ill. Dec. 14, 2000); *Kitchen v. Burge*, 2011 WL 1485301, at *14 (N.D. Ill. Apr. 19, 2011); *Jones v. Navia*, 2010 WL 4878869, at *4 (N.D. Ill. Nov. 23, 2011); *Thompson v. City of Chicago*, 2009 WL 674353, at *5 (N.D. Ill. Mar. 12, 2009). Since Padilla knew that he was falsely imprisoned when he was first taken into custody, it follows that he could have pursued an action for false imprisonment from that day. Plaintiff cites two cases which support his position, *Cooper v. Butler*, 1995 WL 399009, at *5 (N.D. Ill. June 29, 1995) (briefly mentioning that the statute of limitations for false imprisonment

ran from his acquittal and release), and *Hernandez v. Sheahan*, 1993 WL 257486, at *6 (N.D. Ill. July 8, 1993), but I nonetheless find that the statute of limitations for a false imprisonment claim under Illinois law begins to run the first day of wrongful confinement is more in keeping with Illinois law. Pursuant to the relevant statute, the statute of limitations in this case is one year. 745 ILCS 10/8-101; *see Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (explaining that the one-year statute of limitations governs state law claims joined with a § 1983 claim). Since Plaintiff was arrested on May 9, 2005, and did not file this complaint until 2007, his claim is untimely. Therefore, Plaintiff's state law false imprisonment claim is time barred and defendants' motion to dismiss as to Count III is granted.

**D. Other State Law Claims**

Since I am denying defendants' motion to dismiss as to Counts I and II, supplemental jurisdiction exists as to the remaining state law claims. Therefore, defendants' motion to dismiss as to Counts IV, V, VI, and VII is denied.

**IV. CONCLUSION**

For the foregoing reasons, I deny Defendants' motion to dismiss as to Counts I, II, IV, V, VI, and VII, but am granting defendants' motion to dismiss as to Count III.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: August 24, 2011

14